AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| United States of America | ) |
|---|---|
| v. | ) |
| MARC ANTHONY HAYES | ) Case No. |
|  | ) 6:21-mj 1537-EJK |
|  | ) |
| *Defendant(s)* | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __1/12-13/2021__ in the county of __Orange__ in the __Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(o) | Possession or transfer of a machinegun. |

This criminal complaint is based on these facts:

Please see attached.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Alexander Jacobo, Special Agent
*Printed name and title*

Sworn to before me over ZOOM and signed by me pursuant to Fed.R.Crim. P. 4.1 and 4(d).

Date: 06/30/2021

_____
*Judge's signature*

City and state: Orlando, Florida

EMBRY J. KIDD, United States Magistrate Judge
*Printed name and title*

STATE OF FLORIDA                                      CASE NO.: 6:21-mj-1537-EJK

COUNTY OF ORANGE

### AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Alexander R. Jacobo, depose and says as follows:

1. I am a Special Agent ("SA") with the United States Department of Justice Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), currently assigned to the Orlando Field Office. I have been employed as a SA with ATF since June, 2018. I completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center ("FLETC") in 2018. I completed Special Agent Basic Training at the ATF National Academy, also located at FLETC, in December 2018. Before joining ATF, I attained a Bachelor's in Political Science from Florida Atlantic University and a Juris Doctor from Florida International University College of Law. Additionally, I was employed as a Police Officer with the Davie Police Department for approximately four years.

2. I have received training concerning violations of the Gun Control Act within Title 18 of the United Stated Code and violations of the National Firearms Act within Title 26 of the United States Code. In addition, I have received training regarding the following topics, although this list is not exhaustive: surveillance; interviewing; writing of warrants; handling of evidence; arrest procedures; search procedures and testifying in court. Since graduating from the Academy, I have been assigned to the ATF Tampa Field Division-Orlando Group III Field Office, tasked

with investigating gun trafficking, narcotics trafficking, organized crime, street gangs, and other types of violent crime.

3. The following affidavit is based on my personal experience and involvement in this ongoing investigation, my conversations with other law enforcement officers, as well as my examination of documents and evidence related to this case. Because this affidavit is submitted for the limited purpose of establishing probable cause for a search warrant, it does not contain each and every fact that I have learned during the course of this investigation. The following statements are true and correct to the best of my knowledge.

4. I present this affidavit in support of a criminal complaint alleging a violation of 18 U.S.C. § 922(o) (possession or transfer of a machinegun) by Marc HAYES.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses, as well as documentary and physical evidence. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. During the month of January 2021, an ATF Confidential Informant (CI)[1], directed by law enforcement, completed the controlled purchase of several

---

[1] The CI is a paid informant who has previously provided reliable information concerning criminal activities that resulted in multiple convictions. The CI also provided information on criminal violations that were corroborated by an independent follow-up investigation.

firearms from an individual known to law enforcement officers as "AR." AR is currently a cooperating defendant that pled guilty to the unlawful sale or transfer of machineguns.

7. Between January 10-13, 2021, the CI purchased five firearms from AR. ATF agents monitored and recorded these transactions. On or about January 12, 2021, AR revealed to the CI he had a source for "flash bangs n ar ch[i]p." AR then messaged a photograph of what appeared to be an auto sear for a semi-automatic AR-15 type firearm, a part that is designed and intended exclusively for use in converting a rifle into a machinegun. An auto sear is commonly referred to as a "chip." Pursuant to 26 U.S.C. § 5845, "auto sears constitute a machinegun because these are "part[s]" designed and intended solely and exclusively … for use in converting a weapon into a machinegun."

8. The CI asked to purchase four of the auto sears. Thereafter, on or about January 13, 2021, the CI confirmed the purchase of the four auto sears and a firearm with AR. AR told the CI he had to travel to Kissimmee to pick up the auto sears first. Law enforcement believed AR was getting the devices from a secondary source. That afternoon, the CI completed a controlled purchase of four 3D printed auto sears from AR. *See* image below of the four 3D printed auto sears.

3



9. On or about January 15, 2021, ATF executed a federal search warrant at AR's residence in Orlando, to search for and seize evidence related to firearm violations. During a search of the residence, ATF SAs located three 3D printed auto sears, similar to the four 3D printed auto sears the CI previously purchased from AR.

10. A firearms expert with ATF's Firearms and Ammunition Technology Division (FATD) forensically analyzed the auto sears and found that the devices are 3D printed auto sears, meaning the devices were manufactured using a 3D printing device. The ATF FATD expert also tested the functionality of the auto sears. The expert installed each auto sear into a semiautomatic AR-15 type rifle and then performed a function test. With the 3D-printed auto sears installed, the AR-15 type rifle functioned as an automatic machinegun. Thus, the auto sears were found to be parts designed and intended solely and exclusively for use in converting a weapon into a machinegun. As such, the 3D-printed auto sears themselves qualify as machineguns under 26 U.S.C. § 5845(b).

11. On or about January 15, 2021, ATF SAs interviewed AR and asked where he purchased the above mentioned seven auto sears. AR said he purchased them from a man he met via Facebook as "*Mecca SunSeer BA*." SAs located the Facebook page (https://m.facebook.com/seymour.kash.3) and showed it to AR, who identified "*Mecca SunSeer BA*" as the person who sold him the auto sears. An ATF Intelligence Research Specialist (IRS) identified "*Mecca SunSeer BA*" as Marc HAYES. AR also identified HAYES' division of motor vehicle photo as the person that sold him the auto sears through Facebook and Facebook Messenger.

12. On February 3, 2021, AR was interviewed a second time by ATF agents. During this interview, AR again identified HAYES, a/k/a "*Mecca SunSeer BA*," as the person that sold him seven auto sears.

13. On or about March 25, 2021, AR was interviewed again by ATF SAs. AR stated he purchased approximately 10-12+ firearms from HAYES between October 2020 and January 2021, and never completed any required paperwork regarding those transactions. During this meeting, AR showed agents Facebook Messenger conversations with HAYES where they discussed the purchase of the above referenced auto sears. AR stated he and HAYES met at public locations to complete the transactions, confirmed by the Facebook Messenger communications. AR also stated that HAYES kept his firearms at his residence. When asked how he knew that, AR stated HAYES mentioned having to go home or get a firearm from his home.

14. AR's Facebook Messenger showed a conversation that took place on or about January 12, 2021, where AR agreed to purchase a firearm from HAYES. During that conversation HAYES wrote to AR, "I got something special to show you too." HAYES also stated he was at the meet location in a "grey dodge caravan."

15. During their in-person meeting, HAYES showed AR the auto sear, as well as several flashbangs and smoke grenades. AR stated that HAYES retrieved the devices from a compartment behind the driver's seat of his vehicle. HAYES told AR the auto sear was used to make a firearm fully automatic, and he (HAYES) could show AR how to install it, but that was easy to do. HAYES also indicated that should AR get pulled over by the police, he should just tell them it was a COVID-19 door handle opening device. AR purchased one auto sear and one firearm from HAYES at this time.

16. AR's Facebook messenger also shows that on or about January 13, 2021, AR sent HAYES another message indicating, "I may want more of the fde thing I got if I get 4 what you do for me." HAYES responded, "$35 each." According to AR, the discussion was about the purchase of additional auto sear devices. *See* image below of communications between AR and HAYES through their Facebook Messenger accounts, including a description of the HAYES' vehicle.

6



17. Based on that conversation, HAYES and AR agreed to meet that day. AR stated he purchased approximately six auto sears from HAYES on that day. Thereafter, AR met with the CI and sold him four auto sears. Later that same day, AR sent another message to HAYES, asking: "I may need more br0." HAYES responded, "ok. I got to hit my dude." AR said he would "take 6 at least," and HAYES responded, "just put in an order for a dozen." *See* image of communications between HAYES and AR through their Facebook Messenger accounts.



18.     The sale of the auto sear transactions between HAYES and AR occurred in Kissimmee and Orlando, Florida, which are within the Middle District of Florida.

19.     At the request of SA Nestor Vazquez, a query was conducted of the ATF Federal Licensing System (FLS) to determine if HAYES possessed Federal Firearm Licenses and/or Federal Explosive Licenses (FEL) with negative results, indicating that HAYES has not been issued a FFL or FEL nor is he listed on any other person or corporation's license.  The query also included the National Firearms Registration and Transfer Record (NFRTR), which is the central registry of all NFA weapons in the

United States. This indicates HAYES does not have nor has he applied to obtain a registration for NFA weapons, to include machineguns and explosive devices.

20. On April 20, 2021, SA Kathryn Simmons obtained a federal search warrant, signed by United States Magistrate Judge Gregory J. Kelly, for HAYES' Facebook account during the month of January 2021, the timeframe during which he was communicating with AR regarding the auto-sears. The search warrant return identified HAYES as the subscriber of the Facebook account. It also revealed conversations between HAYES and AR about the sale of auto sears, as well as multiple other firearm sale transactions with other individuals. Additionally, there was a screenshot of a conversation where HAYES indicates, "I just sold my last 5 flash bangs," which corroborates AR's account that HAYES was selling flashbangs. *See* HAYES' (identified as "Mecca" or "M" below) message regarding the sale of 5 flash bangs.

9



21.     On June 30, 2021, ATF SAs executed a search warrant at HAYES' residence, in 1715 Leroy Rd, Haines City, FL, in connection with the investigation, finding two 3D printed auto-sears similar to those purchased from and found within AR's residence. The auto-sears were field tested in a firearm by ATF SA Bryan Page and functioned as machineguns. *See* photo of the auto-sears:



22. Based on the information provided above, there is probable cause to believed that between on or about January 12 and January 13, 2021, in the Middle District of Florida, and within the jurisdiction of this Court, Marc HAYES was in violation of 18 U.S.C. § 922(o) (possession or transfer of a machinegun).

This concludes my affidavit.

_____
Alexander R. Jacobo
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Affidavit submitted by email and attested to me as true and accurate via Zoom/video conferencing consistent with Fed. R. Crim. P. 4.1 and 41(d)(3), this 30 day of June, 2021.

_____
EMBRY J. KIDD
United States Magistrate Judge

11